COURT OF APPEALS
DECISION
DATED AND FILED

June 22, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP141**

STATE OF WISCONSIN

Cir. Ct. No. 2020TP68

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO J.K., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

PETITIONER-RESPONDENT,

V.

M.R.K.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: GWENDOLYN G. CONNOLLY, Judge. *Affirmed.*

¶1 BRASH, P.J.[1] M.R.K. appeals the order of the trial court terminating his parental rights to J.K. He argues that the trial court erred in entering a default judgment against him after he failed to appear at a hearing on the State's petition for the termination of his parental rights, and that his motion to vacate the default judgment should not have been denied. We disagree, and therefore affirm.

## BACKGROUND

¶2 M.R.K. is the adjudicated father of J.K., who was born in August 2018. J.K.'s mother, A.H., had ongoing drug problems, and J.K. was born with THC and Methadone in his system. A.H. subsequently died of a drug overdose in June 2019.

¶3 M.R.K. also has an ongoing drug problem. He was found unresponsive in a mall bathroom in August 2019 due to a suspected drug overdose, and has an extensive criminal history.

¶4 A petition for protection or services (CHIPS) for J.K. was filed in October 2018 because both M.R.K. and A.H. were incarcerated at that time, and J.K. was placed in foster care. The dispositional order relating to that CHIPS petition listed a number of requirements that had to be met by J.K.'s parents before he could be returned to their care. Those requirements included demonstrating proper supervision of J.K., successfully completing a drug treatment program, and

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

committing no new criminal offenses. The CHIPS order also required regular visitation with J.K.

¶5 M.R.K. failed to meet these conditions. He had very little contact with J.K. and continued to have untreated drug problems. He also continued to engage in criminal activity, which resulted in his being in and out of custody while the CHIPS order was in force. At one point, he absconded from probation.

¶6 As a result, a petition for the Termination of Parental Rights (TPR) of M.R.K. with regard to J.K. was filed in March 2020. In the TPR petition, the State's alleged grounds for termination included the continuing need of protection or services for J.K., pursuant to WIS. STAT. § 48.415(2), and M.R.K.'s failure to assume parental responsibility, pursuant to § 48.415(6).

¶7 At a hearing on the TPR petition held in April 2020, the trial court[2] confirmed with M.R.K. that he had received the petition. The court also informed M.R.K. that he should contact the office of the State Public Defender (SPD) in order to secure counsel for the proceedings relating to the TPR petition. The trial court then scheduled the next hearing in the matter for four weeks later, to allow time for M.R.K. to obtain counsel. Furthermore, the court emphasized to M.R.K. that it was ordering him to appear at the next hearing,[3] and stated that his failure to appear would result in the court finding him in default. The court went on to explain to M.R.K. the consequences of a default judgment: that "[a] finding of

---

[2] The Honorable Gwendolyn G. Connolly presided over the TPR proceedings, including entering the default judgment against M.R.K. We refer to her as the trial court.

[3] The trial court explained that, due to the pandemic and the resulting orders in effect for the court system, that hearing would be held telephonically. The court provided M.R.K. with instructions regarding how to call the court for the hearing.

default means that you are then no longer able to challenge whatever the legal question or issue is before the court."

¶8 At that next hearing, held in May 2020, M.R.K. failed to appear. Several attempts were made to contact M.R.K. without success. M.R.K.'s case manager from the Division of Milwaukee Child Protective Services (DMCPS) informed the trial court that he had been in regular contact with M.R.K. since the previous hearing, and they had discussed the hearing date several times. Furthermore, there was no record of an attorney having been appointed for M.R.K., and no one appeared at the hearing on M.R.K.'s behalf.

¶9 The trial court observed that at the previous hearing, it had given M.R.K. notice of the May hearing date and had informed him that his failure to appear at that time would result in it finding him in default. As a result, the court found that M.R.K.'s failure to appear was egregious and was the basis for a default judgment with regard to the grounds phase of the TPR proceedings. A dispositional hearing was held a week later, and the court found that terminating M.R.K.'s parental rights to J.K. was warranted.

¶10 M.R.K. filed a motion to vacate the default judgment. He argued that the trial court had erroneously exercised its discretion in entering the judgment because it did not make the appropriate findings as required by WIS. STAT. § 48.23(2)(b)3. M.R.K. further asserted that relief from the judgment was warranted pursuant to WIS. STAT. § 806.07(1)(a), on the ground that his failure to appear was due to excusable neglect.

¶11 A postdispositional evidentiary hearing on the motion was held before the circuit court[4] in March 2021. M.R.K. testified that he had contacted the SPD's office, but they told him they had no attorneys available. M.R.K. explained that he did not appear for the May 2020 hearing because he believed he could not appear in court without an attorney. M.R.K.'s case manager also testified relative his discussions with M.R.K. regarding the proceedings. The case manager stated that he told M.R.K. to continue to contact the SPD's office until an attorney was appointed for him, and that M.R.K. responded that he "never get[s] through to them."

¶12 After considering all the evidence, the circuit court denied M.R.K.'s motion. The court found that M.R.K. was "clearly aware" that he needed to appear at the May 2020 hearing, pursuant to the trial court's order. The circuit court further noted that it was unclear as to why M.R.K. believed that the case would not go forward until an attorney was appointed for him, given the fact that he was familiar with the court system. Additionally, the circuit court found that M.R.K. had received notice of the dispositional hearing that was held a week after the default judgment was entered; the trial court had sent him notice, and M.R.K. confirmed at the postdispositional hearing that it was mailed to the correct address, but he nonetheless failed to appear for that hearing as well.

¶13 As a result, the circuit court held that the trial court had not erroneously exercised its discretion in entering the default judgment against M.R.K. This appeal follows.

---

[4] The Honorable Marshall B. Murray heard M.R.K.'s motion to vacate the default judgment. We refer to him as the circuit court.

**DISCUSSION**

¶14    "The decision whether to enter a default judgment is a matter within the sound discretion of the [trial] court." *Evelyn C.R. v. Tykila S.*, 2001 WI 110, ¶18, 246 Wis. 2d 1, 629 N.W.2d 768.  Our review of a trial court's discretionary decision is deferential, in that we "examine the record to gauge whether the [trial] court reached a reasonable conclusion based on proper legal standards and a logical interpretation of the facts." *State v. Evans*, 2000 WI App 178, ¶7, 238 Wis. 2d 411, 617 N.W.2d 220.  In fact, because the trial court's exercise of its discretion is "so essential to the [it]s functioning, we generally look for reasons to sustain discretionary decisions." *Schneller v. St. Mary's Hosp. Med. Ctr.*, 155 Wis. 2d 365, 374, 455 N.W.2d 250 (Ct. App. 1990).

¶15    M.R.K. argues that the trial court erred in entering the default judgment because it did not comply with the requirements set forth in WIS. STAT. § 48.23(2)(b)3.  That statute dictates that any parent who is subject to TPR proceedings shall be represented by counsel during those proceedings.  *See* § 48.23(2)(b).  There is an exception to this requirement for representation, however, as set forth in subsection 3.:  when a parent who is over the age of eighteen has been ordered by the court to appear at a subsequent hearing, fails to appear, and that failure is deemed to be "egregious and without clear and justifiable excuse," that parent is presumed to have waived his or her right to counsel.  *See* § 48.23(2)(b)3.

¶16    That subsection is not applicable here, as the issue M.R.K. presents on appeal is not whether he waived his right to counsel.  In fact, although M.R.K. failed to appear at the May 2020 hearing after being ordered to do so, he testified

at the postdispositional hearing that it was his failed attempt to obtain counsel—as the trial court had instructed him to do—that kept him from appearing.

¶17    Rather, the issue argued by M.R.K. is whether the trial court properly entered the default judgment against him. By its plain language, WIS. STAT. § 48.23(2)(b)3. does not set forth requirements for entering a default judgment. *See* *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (stating that appellate courts "have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" (citation omitted)). Therefore, we look to the law that provides the standards for entering a default judgment.

¶18    The trial court "has both inherent authority and statutory authority" to impose sanctions on a party who fails to obey a court order. *Evelyn C.R.*, 246 Wis. 2d 1, ¶17. Under WIS. STAT. § 805.03, when a party "fail[s] … to obey any order of the court," the court "may make such orders in regard to the failure as are just," including orders authorized under WIS. STAT. § 804.12(2)(a). That statute, in turn, allows for the "rendering [of] a judgment by default against the disobedient party[.]" *See* § 804.12(2)(a)3. However, imposing that sanction requires the court to find that the non-complying party has acted "egregiously or in bad faith." *Dane Cnty. DHS v. Mable K.*, 2013 WI 28, ¶69, 346 Wis. 2d 396, 828 N.W.2d 198 (citation omitted).

¶19    Here, the trial court found that M.R.K.'s non-appearance was egregious. The term "egregious," as it relates to imposing sanctions, has been defined as "extraordinary in some bad way; glaring, flagrant[.]" *See* *Sentry Ins. v. Davis*, 2001 WI App 203, ¶21 n.8, 247 Wis. 2d 501, 634 N.W.2d 553 (citation

7

omitted). Based on the record, we conclude that the trial court did not err in making the determination that M.R.K.'s non-appearance was egregious: the court had explicitly ordered him to appear—including detailed instructions with regard to calling the court since it was a telephonic hearing—and told him that his failure to appear would result in a default judgment against him, explaining with particularity the consequences of such a judgment. Moreover, the court noted that M.R.K. also had not followed its instructions with regard to obtaining counsel, as there had been no SPD appointment made at the time of the May 2020 hearing.

¶20    Based on these facts and the legal standard for entering a default judgment, we conclude that the trial court did not erroneously exercise its discretion in doing so in this case. *See Evans*, 238 Wis. 2d 411, ¶7.

¶21    That said, M.R.K. next argues that the default judgment should be vacated pursuant to WIS. STAT. § 806.07(1)(a), on the ground that his failure to appear was due to excusable neglect. The circuit court may grant a party's motion for relief from a judgment for a variety of reasons under § 806.07, including excusable neglect. "Excusable neglect is not the same as neglect, carelessness or inattentiveness." *Connor v. Connor*, 2001 WI 49, ¶16, 243 Wis. 2d 279, 627 N.W.2d 182. Rather, it is "that neglect which might have been the act of a reasonably prudent person under the same circumstances." *Hedtcke v. Sentry Ins. Co.*, 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982) (citation omitted). The defendant bears the burden of demonstrating excusable neglect. *Connor*, 243 Wis. 2d 279, ¶28. "We will not disturb a circuit court's decision regarding excusable neglect unless an erroneous exercise of discretion is clearly shown." *Id.*, ¶18.

¶22    M.R.K. has not met his burden of establishing excusable neglect. He testified at the postdispositional hearing that the reason for his non-appearance

was that he had been unable to obtain counsel through the SPD's office, and believed that he could not appear at the May 2020 hearing without counsel. Although the circuit court did not specifically reference excusable neglect, it stated that this was not a reasonable conclusion by M.R.K., given his familiarity with the court system based on his criminal history. *See **Hedtcke***, 109 Wis. 2d at 468. M.R.K. further testified that he never considered calling into the court for the May 2020 hearing—also an unreasonable response, given that he had been ordered by the trial court to appear. *See **id.***

¶23     Therefore, we conclude that the circuit court did not erroneously exercise its discretion in denying M.R.K.'s motion to vacate the default judgment against him. Accordingly, we affirm the order terminating M.R.K.'s parental rights to J.K.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.